UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NATALIE QUALLS, On Behalf of Herself and All Others Similarly Situated c/o SPANGENBERG SHIBLEY & LIBER LLP 1001 Lakeside Avenue East, Suite 1700 Cleveland, OH  44114 <br><br> Plaintiff <br><br> vs. <br><br> WRIGHT-PATT CREDIT UNION, INC. c/o Scott R. Everett, Statutory Agent 3560 Pentagon Boulevard Beavercreek, OH  45431 <br><br> Defendant | **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> **CASE NO. _____** |

Plaintiff, Natalie Qualls, on behalf of herself and all others similarly situated, sues Defendant, Wright-Patt Credit Union, and alleges:

## INTRODUCTION

1.      Plaintiff brings this action on behalf of herself and a class of all similarly situated consumers against Defendant Wright-Patt Credit Union, Inc. ("WPCU" or the "Credit Union"), arising from (a) the assessment of multiple Non-Sufficient Funds Fees ("NSF Fees") on the same transaction, which is barred by the account contract and violates the implied covenant of good faith and fair dealing; and (b) the assessment of two separate Out of Network ATM Fees ("OON Fees") on a single ATM use, which is also barred by the contract and violates the implied covenant of good faith and fair dealing.

2.      First, in violation of its contract and reasonable consumer understanding, WPCU often charges more than one $25 NSF Fee on the *same transaction*, even though the contract states—and reasonable consumers understand—that the same transaction can only incur a *single*

NSF Fee. These double and triple penalties crush accountholders already struggling to make ends meet.

3.      Second, when WPCU accountholders use a non-WPCU ATM, ATM fees add up very quickly—to accountholders' surprise. Not only does the non-WPCU ATM operator charge the consumer a fee for use of its ATM, a charge which now averages $3, but WPCU charges an OON Fee for a cash withdrawal as well—a punishing double-fee on accountholders that can rise to a total of several dollars for simply accessing their own money. WPCU never adequately informs consumers they will be charged two separate fees for each non-WPCU ATM withdrawal, and never tells consumers the total amount of that double-fee.

4.      WPCU does not stop there, however. On some out-of-network ATM withdrawals, WPCU accountholders pay a *third* fee for withdrawing funds at an out-of-network ATM—one fee to the ATM operator and *two* OON Fees to WPCU. Specifically, when WPCU accountholders perform a "balance inquiry" prior to withdrawing funds at an out-of-network ATM, WPCU charges its accountholder two OON Fees—*one for the balance inquiry and one for the withdrawal*.

5.      For a simple out-of-network ATM withdrawal, for example, Plaintiff paid three separate fees, including two separate fees to WPCU.

6.      These practices work to catch accountholders—many of whom are struggling to get by—in an increasingly devastating cycle of fees.

7.      Plaintiff, along with other WPCU accountholders, has been injured by WPCU's improper practices. On behalf of herself and the Class, Plaintiff seeks damages, restitution, and injunctive relief for WPCU's breach of contract and violation of Ohio law.

**PARTIES**

8.      Plaintiff is a citizen and resident of Columbus, Ohio, who maintains a WPCU checking account.

9.      Defendant WPCU is a credit union with its headquarters and principal place of business located in Fairborn, Ohio.  Among other things, WPCU is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts.

**JURISDICTION AND VENUE**

10.      This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than WPCU.

11.      WPCU regularly and systematically conducts business and provides retail banking services in this district, and provides retail banking services to its customers, including Plaintiff and members of the putative class.  WPCU also maintains its registered agent and corporate headquarters in this district.  As such, it is subject to the jurisdiction of this Court.

12.      Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because WPCU is subject to personal jurisdiction in this Court and regularly conducts business within this district through its corporate headquarters and multiple branches located within this district. In addition, a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.    WPCU ASSESSES MULTIPLE NSF FEES ON THE SAME TRANSACTION

13.    As a matter of policy and practice, WPCU has programmed its systems to charge multiple NSF Fees on the same electronic transactions, when those transactions are rejected for insufficient funds then re-processed for payment again.

14.    This abusive practice is not universal in the banking industry.  Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same transaction when it is processed for payment multiple times.  Instead, they charge one NSF Fee even if a transaction is processed for payment multiple times.

15.    Worse, WPCU's deposit agreement never discloses this practice; to the contrary, it indicates it will not undertake this practice.

### A.    The Purpose and Nature of OD and NSF Fees

16.    When a bank rejects an attempted transaction on a checking account due to insufficient funds, it sends an electronic notification back to the merchant stating that the transaction was not approved.  WPCU charges a $25 NSF Fee when it performs this action.  Because rejection is essentially cost-free, the $25 NSF Fee is pure profit.

17.    The rejection of an attempted transaction provides zero benefit to the accountholder, as the CFPB has noted:

> An important consumer outcome of any overdraft program is the percentage of negative transactions that are paid (i.e., result in overdrafts) or returned unpaid (i.e., were NSFs).  **Paying overdraft transactions may confer some benefit (in exchange for the associated fees and other costs) to consumers by helping them make timely payments and avoid late penalty fees and/or interest charges from a merchant or biller.  In contrast, returning an item generally confers little benefit to the**

**consumer (other than perhaps deterring future overdrafting and any subsequent consequences) and can result in an NSF fee as well as additional related fees, such as a returned check fee charged by the institution to whom the check was presented or a late fee charged by the entity to whom payment was due.** At the median, study banks paid into overdraft 83% of transactions that exceeded the available balance in 2011 and returned 17%.

*CFPB Study of Overdraft Programs*, CFPB (June 2013), at 26 (emphasis added), available at

https://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf.

18.     Multiple rejections and fee assessments on the same transaction not only provide no benefit to already-strapped accountholders, they devastate them.

**B.     Plaintiff's Experience**

19.     As one example, on April 20, 2017, Plaintiff attempted to make a payment to Tree of Life, via an ACH transaction.

20.     WPCU rejected payment of that transaction due to insufficient funds and charged Plaintiff a $25 NSF Fee for doing so.

21.     Two weeks later, on May 5, 2017, the same transaction was reprocessed for payment, and again WPCU rejected the transaction due to insufficient funds and charged Plaintiff another $25 NSF Fee for doing so.

22.     In sum, WPCU charged Plaintiff $50 in fees for her attempt to make a payment.

23.     Plaintiff took no affirmative action to resubmit the transaction.

24.     Plaintiff understood her payment to be single transaction as is laid out in WPCU's contract, capable at most of receiving a single NSF Fee (if returned) or OD Fee (if paid).

25.     WPCU itself also understood the attempted payment to be single transaction, and its systems identified it as such.  Indeed, on Plaintiff's account statement, WPCU described subsequent attempt to debit the transaction as a "RETRY PYMT."

26. As another example, on March 21, 2017, Plaintiff attempted an ACH payment to an insurance company.

27. WPCU rejected payment of that transaction due to insufficient funds, and charged Plaintiff a $25 NSF Fee for doing so.

28. Three days later, on March 24, 2017, the same transaction was processed for payment again, and again WPCU rejected the transaction due to insufficient funds, and again charged Plaintiff a $25 NSF Fee.

29. Plaintiff took no affirmative action to resubmit the transaction.

30. Plaintiff understood her insurance payment to be single transaction as is laid out in WPCU's contract, capable at most of receiving a single NSF Fee (if returned) or OD Fee (if paid).

31. In sum, WPCU charged Plaintiff $50 in NSF Fees on a single insurance payment transaction.

**C.      WPCU Violates Express Promises and Representations Made by the Credit Union When It Charges More than One NSF Fee on the Same "Item"**

32. WPCU's account documents state that it will charge $25 per "item" that is returned due to insufficient funds, and the Credit Union is in breach when it charges multiple NSF Fees on a single item.

33. As used throughout WPCU's "Deposit Agreement", attached hereto as Exhibit A, the term "item" must describe all iterations of a single given instruction for transfer or payment from a checking or savings account.  For instance, a single check is a single item.

34. WPCU's Deposit Agreement states: "Item.  An item refers to a check, substitute check, electronic item, draft, demand draft, or other order or instruction for the payment, transfer or withdrawal of funds."

35. The same instruction for payment on an account cannot conceivably become a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

36. The Deposit Agreement also states that an item can at most be subject to a single fee: "Whether the item is paid or returned, your account may be subject to **a fee** as set forth in the current Account Disclosure fee schedule" (emphasis added).

37. Even if an instruction for payment is reprocessed, it is still the same "item." It is simply another attempt at Plaintiff's original order or instruction.

38. This is important because WPCU's General Fee Schedule (attached hereto as Exhibit B) states that an "NSF" is assessed at $25 "per **item**":

> Non-Sufficient Funds (NSF), **per item**, created by check, ACH (Electronic Item),
>
> or other. $25.00

(emphasis added).

39. This General Fee Schedule is part of the contractual terms governing a WPCU account. WPCU advertises it Fee Schedule and Account Agreement on its website, and in doing so, it falsely portrays the fees it charges its accountholders.

40. There is zero indication in the account documents that the same "item" is eligible to incur *multiple* NSF Fees. Instead, the General Fee Schedule plainly states that only a single $25 NSF Fee will be assessed per item.

41. Moreover, as above, WPCU uses singular terms to discuss the assessment of fees on transactions.

42.     In sum, WPCU promises that one $25 NSF Fee will be assessed per item, and "item" must mean all iterations of the same instruction or order for payment. As such, WPCU breached the contract when it charged more than one NSF Fee per item.

43.     Consistent with express representations in the account documents, reasonable consumers understand any given authorization for payment to be one, singular "item" as that term is used in WPCU's contract documents. No reasonable consumer would understand a single check, for example, to be multiple "items."

44.     Upon information and belief, WPCU has this same understanding in practice, since its systems process transactions in a way that alerts the Credit Union when the same item or transaction is being reprocessed.

45.     The contract documents bar WPCU from assessing multiple NSF Fees on the same item.

46.     Lastly, the contract documents never state that one transaction or item can incur multiple NSF Fees, and never discloses that one transaction can count as multiple "items" for purposes of fee assessment.

47.     Banks and credit unions like WPCU that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other financial institutions that do engage in this abusive practice disclose it expressly to their accountholders—WPCU did not.

48.     For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as WPCU, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge

reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

49. First Hawaiian Bank engages in the same abusive practice as WPCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

50. Klein Bank similarly states in its Online Banking Agreement:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

51. WPCU provides no such disclosure, and in so doing, deceives its accountholders.

**D.**    **WPCU Abuses Discretion**

52. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations. That means the Credit Union is prohibited from exercising its discretion to enrich itself and gouge its customers. Instead of exercising any discretion it may have in good faith and consistent with Plaintiff's reasonable expectations, the Credit Union

abuses that discretion to take money out of Plaintiff's account without her permission and contrary to her reasonable expectations that she will not be charged multiple NSF Fees for the same transaction.

53.     To the extent the account documents do not explicitly bar the practices described above, WPCU exploits its contractual discretion to the detriment of accountholders and breaches its duty of good faith and fair dealing when it employs these practices.  The allegations that WPCU has contractual discretion are made in the alternative to the allegations that the NSF Fee practices are expressly in breach of the Deposit Agreement and other account documents.

54.     As set forth in the Deposit Agreement, "Whether the item is paid or returned, your account **may** be subject to a fee as set forth in the current Account Disclosure fee schedule." (emphasis added).  Given that when an "item" is processed for payment a second or third time, WPCU has *already* assessed a $25 NSF Fee on that item, WPCU could simply not charge another $25 NSF Fee on the same item when a customer's account had insufficient funds.  This would result in a single NSF Fee, rather than two or more NSF Fees.  By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other accountholders—WPCU abuses the power it has over Plaintiff and her bank account and acts contrary to her reasonable expectations under the Deposit Agreement.  This is a breach of the Credit Union's implied covenant to engage in fair dealing and act in good faith.

55.     It was bad faith and totally outside Plaintiff's reasonable expectations for WPCU to abuse its discretion to assess $50 in NSF Fees for a single transaction.

56.     WPCU uses its discretion to interpret "item" in an unreasonable way that violates common sense and reasonable consumer expectations.  WPCU abuses its contractual discretion to define that term by choosing a meaning that directly causes more NSF Fees.

57.     Additionally, WPCU grants itself discretion to charge—or not to charge—an NSF Fee on a given transaction.  When it charges more than one NSF Fee on a given transaction, WPCU behaves in bad faith and contradicts reasonable consumer expectations.

## II.     WPCU IMPROPERLY CHARGES TWO SEPARATE OON FEES ON SINGLE CASH WITHDRAWALS AT OUT OF NETWORK ATMS

### A.     Out-of-Network ATM Withdrawals

58.     When consumers use ATMs not owned by their own financial institution, federal law requires the owners of those out-of-network ATMs to inform users of the amount of the usage fees charged by the ATM owner.

59.     Thus, it is standard at ATMs in the United States that when a consumer uses an ATM not owned by her home financial institution, a message is displayed on the screen stating that usage of the ATM will cost a specified amount to proceed with a withdrawal of funds, and that such a fee is in addition to a fee that may be assessed by a consumer's financial institution for use of the ATM.

60.     That message appears only after a user has decided to perform a cash withdrawal and entered the amount of cash she would like to withdraw.

61.     Through repeated exposure to such fee warning messages, consumers are accustomed to being warned of fee assessments at out-of-network ATMs, and to being provided with the opportunity to decide whether the fees charged are reasonable—before proceeding with their cash withdrawal.

62.     WPCU knows this—that consumers expect a fair fee disclosure at the ATM—and has designed a scheme to assess OON Fees on balance inquiries and exploit consumers' reasonable expectation that they will be provided an opportunity to cancel actions before being

assessed a fee. That scheme involves assessing fees for the mere act of checking a balance before proceeding with a cash withdrawal.

63. In the United States, most ATM display screens immediately ask consumers if they would like to "check their account balance" before proceeding with their transaction.

64. The ATM screen does not disclose that a balance inquiry alone will incur a usage fee, and indeed ATM owners in the United States in general do not charge usage fees for balance inquiries.

65. Repeated exposure to such messages is partly responsible for building the reasonable consumer understanding that a balance inquiry is a common lead-in to a withdrawal, a mere first step to the real business at hand, an informational exercise offered by the ATM to help inform the cash withdrawal.

66. Reasonable consumers like Plaintiff do not, in sum, understand a balance inquiry to be an independent transaction worthy of a separate fee.

67. WPCU knows this—that consumers expect a balance inquiry to be an included part of a cash withdrawal—and has designed a scheme to assess OON Fees on those balance inquiries. The Credit Union preys on the common sense that a balance inquiry preceded by a cash withdrawal is not an independent basis for a fee.

68. Thus, in most circumstances, there is simply no warning at the ATM that a balance inquiry alone could incur a fee.

69. As a result, Plaintiff and other WPCU accountholders have zero expectation that WPCU, their home Credit Union, will charge a separate fee for a balance inquiry, especially one that precedes a cash withdrawal at the same ATM.

70.     If a financial institution is going to charge such a conscience-shocking fee, it must fully and fairly disclose the fee in its account documentation. WPCU did the opposite—providing express and implied indications that balance inquires would not incur OON Fees.

**B.     WPCU's Account Contract**

71.     WPCU issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, and ATM withdrawals at both WPCU and non-WPCU ATMs.

72.     Against the backdrop of the reasonable consumer expectations and federal law above, WPCU's disclosures deceive consumers and reinforce the reasonable understanding that no fee will be assessed for a balance inquiry—especially if ATM users are not warned beforehand.

73.     WPCU's disclosures also reinforce the common sense presumption that there can be no balance inquiry fee when such an inquiry is in conjunction with a cash withdrawal at the same ATM.

74.     The Checking Account Disclosure of Fees, Terms and Conditions referenced by WPCU (attached hereto as Exhibit C) never states that a balance inquiry can be an independent basis for an OON Fees. It states:

Non-WPCU ATM Use

- Premier members: Up to $10.00 a month refunded for non-WPCU ATM transactions
- Associate members: First two (2) monthly ATM transactions free; $.60 **per transaction** thereafter
- All remaining members: First six (6) monthly ATM transactions free; $.60 **per transaction** thereafter
- Fees from ATM owner will apply

*See* Exhibit C.

75.     WPCU advertises it Account Agreement and Checking Account Disclosure of Fees, Term, and Conditions on its website, and in doing so, it falsely portrays the fees it charges its accountholders.

76.     Moreover, accountholders using a non-WPCU ATM are never warned that they will receive two separate fees from WPCU when they check their balance before proceeding with a cash withdrawal at the same ATM.  Yet that is exactly what happens.

77.     As discussed *supra*, ATMs immediately prompt consumers to check their balance, and never warn that such a balance inquiry will be the basis for a fee, either from the ATM owner or from the consumer's own financial institution.  WPCU's disclosures do nothing to disabuse consumers of the reasonable understanding that a balance inquiry will not incur a separate fee when it precedes a cash withdrawal at the same ATM, and never state outright that such a fee will be assessed.  Again, the Fee Schedule says nothing more than "$0.60 per transaction."

78.     Moreover, reasonable consumers like Plaintiff do not understand—and are never warned—that a mere balance inquiry (in which no funds are transferred in any way) could be a separate "transaction" that is the basis for an independent OON Fee.

79.     Merriman-Webster defines "transaction" to mean "something transacted; especially: an exchange or transfer of goods, services, or funds."  There is no exchange or transfer involved in a balance inquiry; a balance inquiry is merely a precursor to the actual "transaction"—the cash withdrawal.  Since WPCU has promised only "transactions" will incur an OON Fee, it violates its contract when it charges OON Fees on balance inquiries.

### C.     Plaintiff's Out-of-Network ATM Withdrawals

80.     As one example, on December 24, 2015, Plaintiff withdrew $80 in cash from an out-of-network ATM in Columbus, Ohio.  Prior to withdrawing the cash, Plaintiff was prompted to check her balance, and she did so.  She received no warning that doing so would incur a fee from the ATM owner or from her own financial institution.  The ATM owner charged Plaintiff $2 for the cash withdrawal, but did not charge a fee for the balance inquiry.  Later, WPCU charged Plaintiff two OON Fees—one for the balance inquiry and one for the cash withdrawal— of $0.60 each.  Plaintiff would not have proceeded with the balance inquiry or the cash withdrawal if she had been notified by the ATM owner or by WPCU that she would be charged three separate fees, totaling $3.20, for her cash withdrawal.

81.     Plaintiff was shocked to discover that she was charged these two OON Fees by WPCU, in addition to the ATM owner's fee for the cash withdrawal, especially because she was not warned that the balance inquiry would incur any fee at all.

### CLASS ALLEGATIONS

82.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

83.     The proposed classes are defined as:

> All WPCU checking account holders in the United States who, during the applicable statute of limitations, were charged multiple NSF Fees on the same item (the "National NSF Class").

> All WPCU checking account holders in Ohio who, during the applicable statute of limitations, were charged multiple NSF Fees on the same item (the "Ohio NSF Subclass").

> All WPCU checking account holders in the United States who, during the applicable statute of limitations, were charged multiple

OON Fees on the same cash withdrawal (the "National OON Class").

All WPCU checking account holders in Ohio who, during the applicable statute of limitations, were charged multiple OON Fees on the same cash withdrawal (the "Ohio OON Subclass").

The classes are collectively referred to as the "Classes." The National NSF Class and the Ohio NSF Subclass will be referred to collectively as the NSF Classes. The National OON Class and the Ohio OON Subclass will be referred to collectively as the OON Classes.

84.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

85.     Excluded from the Classes are WPCU, its parents, subsidiaries, affiliates, officers, and directors, any entity in which WPCU has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and any member of such judge's staff and immediate family.

86.     The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to WPCU's records.

87.     The claims of the representative Plaintiff are typical of the claims of the NSF Class in that the representative Plaintiff, like all NSF Class members, was charged improper NSF Fees. The representative Plaintiff, like all NSF Class members, has been damaged by WPCU's misconduct in that she has paid improper NSF Fees.

88.     The claims of the representative Plaintiff are typical of the claims of the OON Class in that the representative Plaintiff, like all OON Class members, was charged improper

OON Fees. The representative Plaintiff, like all OON Class members, has been damaged by WPCU's misconduct in that she has paid improper OON Fees.

89. Furthermore, the factual basis of WPCU's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

90. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

91. Among the questions of law and fact common to the NSF Classes are whether:

    a.    WPCU charged multiple NSF Fees on a single transaction;

    b.    WPCU breached its contract with consumers by charging multiple NSF Fees on a single transaction;

    c.    WPCU breached the covenant of good faith and fair dealing by charging multiple NSF Fees on a single transaction;

    d.    WPCU committed fraud by charging multiple NSF Fees on a single transaction; and

    e.    Plaintiff and the NSF Classes were damaged by WPCU's conduct and if so, the proper measure of damages.

92. Among the questions of law and fact common to the OON Classes are whether:

    a.    WPCU charged multiple OON Fees on a single cash withdrawal;

    b.    WPCU breached its contract with consumers by charging multiple OON Fees on a single cash withdrawal;

    c.    WPCU breached the covenant of good faith and fair dealing by charging multiple OON Fees on a single cash withdrawal;

d.   WPCU committed fraud by charging multiple OON Fees on a single cash withdrawal; and

e.   Plaintiff and the OON Classes were damaged by WPCU's conduct and if so, the proper measure of damages.

93.   Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

94.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of WPCU, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and WPCU's misconduct will proceed without remedy.

95.   Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Breach of Contract Regarding NSF Fees Including Breach of the Covenant of Good Faith and Fair Dealing
**(On Behalf of the Plaintiff and the NSF Classes)**

96.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

97.     Plaintiff (and fellow members of the NSF Classes) and WPCU have contracted for bank account deposit and checking services, as embodied in WPCU's Deposit Agreement and related documentation.

98.     For the reasons discussed herein, the contract documents bar WPCU from assessing multiple NSF Fees on the same transaction.

99.     WPCU charged Plaintiff and members of the NSF Classes multiple NSF Fees on the same transaction.

100.    Therefore, WPCU breached the terms of its contract, the Deposit Agreement and related documentation, with accountholders by charging multiple NSF Fees on the same transaction.

101.    Additionally, under the laws of each state where WPCU does business, good faith is an element of every contract.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

102.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

103.    WPCU has breached the covenant of good faith and fair dealing in the Deposit Agreement through its NSF Fee policies and practices as alleged herein.

104.    Instead of exercising that discretion in good faith and consistent with Plaintiff's reasonable expectations, the Credit Union abuses that discretion to take money out of Plaintiff's account without her permission and contrary to her reasonable expectations that she will not be charged multiple NSF Fees for the same transaction.  Specifically, WPCU regularly charges NSF Fees upon reprocessing of previously declined transactions, even when it knows a customer's account lacks sufficient funds.

105.    By exercising its discretion to enrich itself by gouging its accountholders, WPCU consciously and deliberately frustrates the agreed common purposes of the contract and disappoints the reasonable expectations of Plaintiff and members of the NSF Classes, thereby depriving them of the benefit of their bargain.

106.    WPCU grants itself discretion to charge—or not to charge—an NSF Fee on a given transaction.  When it charges more than one NSF on a given transaction, WPCU breaches the covenant of good faith and fair dealing.

107.    Plaintiff and members of the NSF Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

108.    Plaintiff and members of the NSF Classes have suffered and continue to suffer damages as a result of WPCU's breach of contract and breach of the covenant of good faith and fair dealing.

### SECOND CLAIM FOR RELIEF
### Breach of Contract Regarding OON Fees Including Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the OON Classes)

109.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

110.    Plaintiff (and fellow members of the OON Classes) and WPCU have contracted for bank account deposit and checking services, as embodied in WPCU's Deposit Agreement and related documentation.

111.    For the reasons discussed herein, the contract documents bar WPCU from assessing multiple OON Fees on the same cash withdrawal.

112.    WPCU charged Plaintiff and members of the OON Classes multiple OON Fees on the same cash withdrawal, where the account balance was checked as part of the ATM transaction.

113.    Therefore, WPCU breached the terms of its contract, the Deposit Agreement and related documentation, with consumers by charging multiple OON Fees on the same cash withdrawal.

114.    Additionally, under the laws of each state where WPCU does business, good faith is an element of every contract.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, the parties to

a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

115.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

116.    WPCU has breached the covenant of good faith and fair dealing in the Deposit Agreement through its OON Fee policies and practices as alleged herein.

117.    Instead of exercising that discretion in good faith and consistent with Plaintiff's reasonable expectations, the Credit Union abuses that discretion to take money out of Plaintiff's account without her permission and contrary to her reasonable expectations that she will not be charged multiple OON Fees for the same cash withdrawal.  Specifically, WPCU regularly charges multiple OON Fees where a customer checks her balance as part of a single ATM transaction.

118.    By exercising its discretion to enrich itself by gouging its accountholders, WPCU consciously and deliberately frustrates the agreed common purposes of the contract and disappoints the reasonable expectations of Plaintiff and members of the OON Classes, thereby depriving them of the benefit of their bargain.

119.    In addition, WPCU grants itself discretion to charge—or not to charge—an OON Fee on a given cash withdrawal.  When it charges more than one OON Fee on a given cash withdrawal, WPCU breaches the covenant of good faith and fair dealing.

120.     Plaintiff and members of the OON Classes have performed all, or substantially all of the obligations imposed on them under the contract.

121.     Plaintiff and members of the OON Classes have suffered and continue to suffer damages as a result of WPCU's breach of contract and breach of the covenant of good faith and fair dealing.

### THIRD CLAIM FOR RELIEF
### Fraud Regarding Multiple NSF Fees
**(On Behalf of the Plaintiff and the NSF Classes)**

122.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

123.     WPCU misrepresented to Plaintiff and to the members of the NSF Classes that only a single NSF fee would be charged on a given transaction.  These uniform misrepresentations were made in the Deposit Agreement and Fee Schedule.  These uniform misrepresentations were false.

124.     WPCU knew that these uniform misrepresentations were false.

125.     Based on these uniform representations made by WPCU falsely and with intent to deceive, and in reasonable reliance on them, Plaintiff and members of the NSF Classes paid charges for multiple NSF Fees on a single transaction.  Further, Plaintiff and the members of the NSF Classes reasonably relied on these representations presented by WPCU, and reasonable relied on, as true, the amount listed as being due.

126.     Plaintiff and members of the NSF Classes reasonably relied on these representations and paid the multiple NSF Fees to WPCU, illegally and improperly benefitting WPCU in receiving more money that it was owed through the multiplied NSF Fees.

127. These representations were material to the multiple NSF Fee charges, as otherwise, WPCU would not have been able to charge Plaintiff and members of the NSF Classes multiple NSF Fee charges as they did.

128. WPCU's acts and practices proximately caused injury to Plaintiff and the NSF Classes, and they are entitled to, *inter alia*, damages in the amount of the payments exceeding what they would have paid but for the fraudulent fee charges.

129. WPCU engaged in this conduct in the same way to all members of the NSF Classes, who reasonably relied thereon in similar fashion.

<u>**FOURTH CLAIM FOR RELIEF**</u>
<u>**Fraud Regarding Multiple OON Fees**</u>
**(On Behalf of the OON Classes)**

130. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

131. WPCU misrepresented to Plaintiff and to the members of the OON Classes that only a single OON Fee would be charged for a single ATM cash withdrawal. These uniform misrepresentations were made in the Deposit Agreement and Fee Schedule. These uniform misrepresentations were false.

132. Defendant knew that these uniform misrepresentations were false.

133. Based on these uniform representations made by WPCU falsely and with intent to deceive, and in reasonable reliance on them, Plaintiff and members of the OON Classes paid charges for OON ATM transactions which were false. Further, Plaintiff and members of the OON Classes reasonably relied on these uniform misrepresentations presented by WPCU, and reasonably relied on, as true, the amount listed as being due.

134. Plaintiff and members of the OON Classes reasonably relied on these uniform misrepresentations and paid the multiple OON Fees to WPCU, illegally and improperly benefitting WPCU in receiving more money that it was owed through the multiplied OON Fees.

135. These representations were material to the multiple OON Fee charges, as otherwise, WPCU would not have been able to charge Plaintiff and members of the OON Classes multiple OON Fee charges as they did.

136. WPCU's acts and practices proximately caused injury to Plaintiff and the OON Classes, and they are entitled to, *inter alia*, damages in the amount of the payments exceeding what they would have paid but for the fraudulent fee charges.

137. WPCU engaged in this conduct in the same way to all members of the OON Classes, who reasonably relied thereon in similar fashion.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1. Declaring WPCU's NSF Fee policies and practices to be wrongful, unfair, and unconscionable;

2. Declaring WPCU's OON Fee policies and practices to be wrongful, unfair, and unconscionable;

3. Restitution of all relevant fees paid to WPCU by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

4.      Disgorgement of the ill-gotten gains derived by WPCU from its misconduct;

5.      Actual damages in an amount according to proof;

6.      Punitive and exemplary damages;

7.      Pre-judgment interest at the maximum rate permitted by applicable law;

8.      Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9.      Such other relief as this Court deems just and proper.

Dated: May 14, 2019

Respectfully submitted,

s/ Stuart E. Scott
STUART E. SCOTT (0064834)
KEVIN C. HULICK (0093921)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (FAX)
*sscott@spanglaw.com*
*khulick@spanglaw.com*

JEFFREY D. KALIEL (DC 983578)
SOPHIA G. GOLD (DC 1044723)
**KALIEL PLLC**
1875 Connecticut Avenue, NW, 10th Floor
Washington, DC 20009
(202) 350-4783
(202) 615-3948 (FAX)
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*
(*Pro Hac Vice* Motions to be submitted)

HASSAN A. ZAVAREEI (DC 456161)
ANDREA R. GOLD (DC 502607)
KATHERINE M. AIZPURU (DC 1022412)
**TYCKO & ZAVAREEI LLP**
1821 L Street NW, Suite 1000
Washington, DC  20036
(202) 973-0900
(202) 973-0950 (FAX)
*hzavareei@tzlegal.com*
*agold@tzlegal.com*
*kaizpuru@tzlegal.com*
(*Pro Hac Vice* Motions to be submitted)

JEFFREY M. OSTROW (FL 0121452)
JONATHAN M. STREISFELD (FL 0117447)
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
1 West Las Olas Boulevard, Suite 500
Fort Lauderdale, FL  33301-1928
(954) 525-4100
(954) 525-4300 (FAX)
*ostrow@kolawyers.com*
*streisfeld@kolawyers.com*
(*Pro Hac Vice* Motions to be submitted)

**Counsel for Plaintiff and the Proposed Class**